IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| NIKOLAOS FRANGOS, ET AL. | : | No. 14-242 |

MEMORANDUM

**Padova, J.**                                                                                            September 18, 2014

Count III of the Indictment in this case charges Defendants Mikhail Zubialevich, Nikolaos Frangos and George Capuzello with concealing, harboring and shielding an alien from detection by immigration and other law enforcement authorities, and aiding and abetting the concealing, harboring and shielding of that alien, in a place, namely the Girard Point Bridge, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii), 1324(a)(1)(B)(i) and 1324(a)(1)(A)(v)(II). Zubialevich has moved to dismiss Count III pursuant to Federal Rule of Criminal Procedure 12(b)(3), arguing that the Count fails both to state an offense that is cognizable under § 1324(a)(1)(A)(iii) (the "Harboring Statute"), and to allege certain elements of the charged offenses. Frangos and Capuzello have filed a Partial Joinder in Zubialevich's Motion to Dismiss, seeking to join Zubialevich's Motion to the extent that it argues that Count III fails to state a cognizable offense. For the following reasons, we deny the Motion to Dismiss.

**I.     BACKGROUND**

The Indictment in this case alleges, in pertinent part, that Frangos is the part-owner of a company that, in 2011, was repairing and refurbishing the Girard Point Bridge (the "Bridge"). Because the Bridge was a nesting site for Peregrine Falcons, the contract for the Bridge work required the company to take certain measures to safeguard the falcons' nesting site. Nevertheless, on June 4, 2011, Capuzello, a company foreman, ordered two employees,

Zubialevich and Walter Morgan, an unauthorized alien, to carry tools and equipment to an area next to the falcons' nesting box and to perform grinding or sanding in that area. When Zubialevich and Morgan performed those tasks, they disturbed the falcons, who then abandoned their nest.

On June 13, 2011, in connection with a criminal investigation of the incident, officers of the Pennsylvania Game Commission and the U.S. Fish and Wildlife Service (the "Wildlife Service"), met with Frangos and requested the names of the individuals who had disturbed the falcons. Frangos promised to provide those names but, at the same time, he did not want to reveal to the authorities that his company employed unauthorized aliens, including Morgan. Accordingly, Frangos and Capuzello persuaded another individual, J.W., to falsely say that he was one of the two workers who had frightened the falcons. Thereafter, in a June 13, 2011 interview, Frangos purported to identify the three workers involved in the incident to the Wildlife Service; on June 24, 2011, J.W., Zubialevich and Capuzello gave false statements to the Wildlife Service; and Capuzello and Zubialevich gave false testimony to a federal grand jury on April 23, 2013, and April 30, 2013, respectively.

The Indictment against Defendants includes five Counts, but the Motion to Dismiss only seeks dismissal of Count III.[1] Count III charges Zubialevich, Capuzello, and Frangos with

---

[1] Count I charges all three Defendants, pursuant to 18 U.S.C. § 371, with conspiracy to knowingly and willfully falsify, conceal and cover up by trick, scheme and device a material fact, i.e., that Morgan had been one of the workers responsible for disturbing the falcons in violation of 18 U.S.C. § 1001. Count II charges Frangos and Capuzello with using intimidation, threatening and corruptly persuading J.W. with the intent to hinder, delay or prevent the communication to a United States law enforcement officer of information concerning a possible violation of the Migratory Bird Treaty Act, 16 U.S.C. §§ 703 and 707, in violation of 18 U.S.C. §§ 1512(b)(3) and 2. Count IV charges Capuzello with making a false declaration before a federal grand jury in violation of 18 U.S.C. § 1623. Count V charges Zubialevich with knowingly and willfully making materially false, fictitious and fraudulent statements to the Wildlife Service on June 24, 2011, by falsely identifying "Joe" as the other worker who was with

violation of the Harboring Statute, which imposes criminal penalties on anyone who:

> knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation[.]

8 U.S.C. § 1324(a)(1)(A)(iii). All three Defendants have moved to dismiss this Count of the Indictment.

## II.     LEGAL STANDARD

As a general matter, Federal Rule of Criminal Procedure 7 requires an indictment to provide "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "[A]n indictment is facially sufficient if it '(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.'" United States v. Huet, 665 F.3d 588, 595 (3d Cir. 2012) (quoting United States v. Vitillo, 490 F.3d 314, 321 (3d Cir. 2007)). "'[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation' to permit a defendant to prepare his defense and invoke double jeopardy." Id. (alteration in original) (quoting United States v. Kemp, 500 F.3d 257, 280 (3d Cir. 2007)).

Federal Rule of Criminal Procedure 12(b)(3) authorizes a defendant to lodge a pretrial challenge to the sufficiency of an indictment on the basis that the indictment "fails . . . to state an offense." Fed. R. Crim. P. 12(b)(3)(B). There are two primary ways in which a defendant can proceed with such a challenge. "First, a defendant may contend that an indictment is insufficient

---

him when the falcons were disturbed, in violation of 18 U.S.C. § 1001.

3

on the basis that it does not satisfy the first requirement in that it 'fails to charge an essential element of the crime.'" United States v. Stock, 728 F.3d 287, 292 (3d Cir. 2013) (quoting Huet, 665 F.3d at 595). "Second, because an indictment that merely 'recites in general terms the essential elements of the offense' does not satisfy the second and third requirements, a defendant may also claim that an indictment fails to state an offense on the basis that 'the specific facts alleged . . . fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation.'" Id. (quoting United States v. Panarella, 277 F.3d 678, 685 (3d Cir. 2002)).

Significantly, our "review of a motion to dismiss an indictment 'is a narrow, limited analysis geared only towards ensuring that legally deficient charges do not go to a jury.'" Id. at 292 n.4 (quoting United States v. Bergrin, 650 F.3d 257, 268 (3d Cir. 2011)). It "'is not . . . a permissible vehicle for addressing the sufficiency of the government's evidence.'" Id. (alteration in original) (quoting Bergrin, 650 F.3d at 265). Accordingly, we may only determine "'whether the facts alleged in the indictment, if accepted as entirely true, state the elements of an offense and could result in a guilty verdict.'" Id. (quoting Bergrin, 650 F.23 at 268). In addition, we must review the facts alleged in the indictment "using a common sense construction." United States v. Hodge, 211 F.3d 74, 76 (3d Cir. 2000) (citation omitted).

### III. DISCUSSION

#### A. Whether the Facts Alleged Fall Within the Scope of the Harboring Statute

Defendants argue that we should dismiss the harboring charge in Count III because the Indictment fails to allege facts that fall within the scope of the Harboring Statute. Count III's charge of harboring in violation of § 1324(a)(1)(A)(iii) requires proof of four elements:

> (1) the alien entered and remained in the United Stated in violation of the law; (2) the defendant concealed, harbored, or sheltered the alien in the United States; (3) the defendant knew, or recklessly disregarded the fact that the alien entered or remained in the

> United States in violation of the law; and (4) the defendant's conduct tended to substantially facilitate the alien remaining in the United States.

United States v. Cuevas-Reyes, 572 F.3d 119, 121-22 (3d Cir. 2009) (quoting United States v. DeJesus-Batres, 410 F.3d 154, 160 (5th Cir. 2005)).  Defendants argue that the Indictment's alleged facts fall beyond the scope of the statute because they allege only that Defendants lied about the historical whereabouts of an alien.  They contend that such conduct cannot constitute concealing, harboring or sheltering and, thus, the Harboring Statute does not criminalize their alleged conduct.[2]

The United States Court of Appeals for the Third Circuit has explained that "shielding," "harboring," and "concealing" encompass any conduct "'tending to substantially facilitate an alien's remaining in the United States illegally' and to prevent government authorities from

---

[2] Zubialevich urges us not to look beyond the specific allegations in Count III and its incorporated paragraphs in determining whether the Count alleges conduct that falls within the scope of the statute.  In particular, he urges us not to consider any of the overt acts alleged in connection with the conspiracy charge in Count I, or the allegation in Count V that he supplied false information in his June 24, 2011 statement to the Wildlife Service.  In support of this argument, Zubialevich cites to cases that essentially hold that the Government must include the essential elements of a conspiracy charge in an indictment's conspiracy count and cannot rely on other unincorporated paragraphs to cure any deficiency.  United Sates v. Wander, 601 F.2d 1251, 1259 (3d Cir. 1979) ("[U]nless the charging part of a conspiracy count specifically refers to or incorporates by reference allegations which appear under the heading of overt acts, resort to those allegations may not be had to supply the insufficiency of the charging language itself." (alteration in original) (quotation omitted)); United States v. Werme, 939 F.2d 108, 111-12 (3d Cir. 1991) ("[T]he charging portion of a conspiracy count may not rely upon other counts within the indictment to cure deficiencies, unless those counts too are expressly incorporated by reference.")  He has not, however, cited to any case that prohibited a court from looking beyond the precise allegations in a Count in order to resolve a challenge to the Count's charge on the basis that the facts alleged fall beyond the scope of the relevant criminal statute.  Moreover, our general guiding principle is that "an indictment must generally be taken as a whole, read reasonably and given fair construction."  United States v. Schramm, 75 F.3d 156, 162 (3d Cir. 1996) (citations omitted).  Accordingly, we will not completely ignore the other allegations in the Indictment in ascertaining whether Zubialevich has been provided "'sufficient factual orientation' to permit [him] to prepare his defense and invoke double jeopardy."  Huet, 665 F.3d at 595 (quoting Kemp , 500 F.2d at 280).

detecting the alien's unlawful presence." United States v. Ozcelik, 527 F.3d 88, 100 (3d Cir. 2008) (quoting United States v. Rubio-Gonzalez, 674 F.2d 1067, 1073 (5th Cir. 1982)).  In the instant case, as detailed above, the Indictment alleges that Defendants prevented law enforcement from detecting Morgan's unauthorized presence in the country by lying to law enforcement officers about Morgan's presence at, and involvement in, prior criminal activity during the course of his employment at the Bridge.  Certainly, such conduct, on its face, is conduct that could "substantially facilitate" Morgan's remaining in the country and could prevent government authorities from detecting Morgan's unlawful presence.[3]  Cf. United States v. Kim, 193 F.3d 567, 574-75 (2d Cir. 1999) (affirming the conviction of a defendant employer under the Harboring Statute, where the employer required his unauthorized alien employee to obtain false documentation and advised the alien how to falsely report that he had been terminated from this job) (cited with approval in Ozcelik, 527 F.3d at 99, and Cuevas-Reyes, 572 F.3d at 123).  We therefore reject Defendants' argument that the alleged conduct constituted nothing more than

---

[3] Defendants argue that, even if lying about an alien's location can constitute concealing, harboring or shielding under certain circumstances, it is not a violation of the Harboring Statute to lie about an alien's historical location if the alien is not physically present at that same location at the time of the lie.  According to Defendants, the Indictment alleges that they concealed, harbored, or shielded Morgan at the Bridge, but does not allege that Morgan was actually at the Bridge at the time they allegedly lied to law enforcement.  Thus, Defendants contend that the allegations do not support a conclusion that their alleged lie served to conceal, harbor or shield Morgan from detection at the Girard Point Bridge location and, as a result, do not allege conduct that falls within the Harboring Statute's scope.

The Indictment alleges, however, that, from June 4, 2011 to on or about June 24, 2011, Defendants concealed, harbored and shielded Morgan from detection at the Bridge.  (Indictment at 11.)  We read this allegation to assert that Morgan was present at the bridge on a regular basis during that entire time frame.  As such, we reject Defendants' assertion that the Indictment does not allege that Morgan was at the bridge at the time that they allegedly lied to law enforcement.  Moreover, even if we did not read the Indictment to include that time-specific allegation, Defendant has cited no persuasive authority to support its assertion that it is essential to the Government's case that it establish that Morgan was present at the Bridge at the time that Defendants were lying to law enforcement.  Accordingly, we will not dismiss Count III on the basis of that argument.

mere lying regarding Morgan's historical location and, thus, does not fall within the scope of the Harboring Statute.

In reaching this conclusion, we have carefully considered, but found unpersuasive, the three cases on which Defendants primarily rely in arguing that the statute does not criminalize their alleged conduct: Ozcelik, 527 F.3d 88; United States v. Silveus, 542 F.3d 993 (3d Cir. 2008); and Cuevas-Reyes, 572 F.3d 119.  In Ozcelik, the Third Circuit considered whether a defendant, who had counseled an unauthorized alien to "keep a low profile," "not do anything illegal," and "stay out of trouble," substantially facilitated an unauthorized alien's illegally remaining in this country.  527 F.3d at 101.  The court observed that such advice was patently obvious and concluded that "[h]olding [the defendant] criminally responsible for passing on [such] general information to an illegal alien would effectively write the word 'substantially' out of the test [the court applies]."  Id.  In the instant case, in contrast to Ozcelik, Defendants allegedly lied to federal authorities in order to prevent them from detecting Morgan's unauthorized presence in the country.  The instant case is therefore easily distinguishable from Ozcelik.[4]

In Cuevas-Reyes, the Third Circuit considered whether the Government had established a violation of the Harboring Statute based on evidence that the defendant had assisted unauthorized aliens to leave the country and failed to advise the aliens that they were required to pass inspection by Immigration and Customs Enforcement Officials before departing.  572 F.3d

---

[4] Defendants rely on the Third Circuit's comment in Ozcelik that "[c]onvictions under § 1324 generally involve defendants who provide illegal aliens with affirmative assistance, such as shelter, transportation, direction about how to obtain false documentation, or warning about impending investigations."  Id. at 99 (citations omitted).  We do not, however, find this statement to support a conclusion that lying to law enforcement about an unauthorized alien's presence at, and participation in, a prior crime cannot constitute affirmative assistance that violates the statute, at least under certain circumstances.

at 121-22.  The court concluded that such conduct did not violate the statute, reasoning that the statute only prohibits conduct that substantially facilitates an alien <u>remaining</u> in the country, not conduct that facilitates an alien's <u>departure</u> from the country.  Id. at 122-23.  <u>Cuevas-Reyes</u> is therefore readily distinguishable from the instant case, which does not involve allegations that Defendants were assisting Morgan to <u>depart</u> the country.

Finally, in <u>Silveus</u>, a jury convicted a defendant of harboring under § 1324(a)(1)(A)(iii) based on evidence that she refused to open the door for a federal agent visiting her home in search of an unauthorized alien, who also lived there, and told the agent that the alien was not home.  <u>Silveus</u>, 542 F.3d at 1003.  On appeal, the Third Circuit reversed the conviction, observing that the evidence "supports no more than mere speculation as to [the unauthorized alien's] presence" when the defendant told authorities that he was not home.  Id. at 1004.  Unlike the facts in <u>Silveus</u>, the allegations in the instant case are that the Defendants explicitly lied to authorities regarding Morgan's presence on the Bridge.  Thus, <u>Silveus</u>, like the other two cases on which Defendants rely, is distinguishable from the instant case.

Accordingly, we find that, contrary to Defendants' assertions, <u>Ozcelik</u>, <u>Cuevas-Reyes</u>, and <u>Silveus</u> do not support the dismissal of Count III.  Moreover, as noted above, we read the Indictment to adequately allege conduct that the Harboring Statute criminalizes.  We therefore deny Defendants' Motion insofar as Defendants argue that we should dismiss Count III because the Harboring Statute cannot be read to criminalize their conduct as alleged.

**B.      Whether the Indictment Alleges Essential Elements of the Charged Offenses**

Defendant Zubialevich argues that we should dismiss Count III as it pertains to him because it fails to allege that he personally engaged in any conduct that could be interpreted as concealing, harboring or shielding, and also fails to allege that he personally knew of, or acted in

reckless disregard of, Morgan's unauthorized alien status. He further argues that we should dismiss the aiding and abetting aspect of Count III because there is no allegation that he did anything to support his co-Defendants' alleged violations of the Harboring Statute or that he knew that his co-Defendants were attempting to prevent law enforcement from learning that Morgan was on the Bridge.

As noted above, an indictment need only provide a "plain, concise, and definite written statement of the essential facts constituting the offense charged," Fed. R. Crim. P. 7(c)(1), and must include "'[n]o greater specificity than the statutory language . . . so long as there is sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy.'" Huet, 665 F.3d at 595 (alteration in original) (quoting Kemp, 500 F.3d at 280). "Generally, an indictment will satisfy these requirements when it informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred." Id. (citations omitted); see also id at 599 (stating that same standard applies with respect to aiding and abetting charges).

Count III alleges as follows:

> From June 4, 2011 and on or about June 24, 2011, . . . [D]efendants . . . knowingly and in reckless disregard of the fact that Walter Morgan . . . had come to, entered, and remained in the United States, in violation of law, concealed, harbored and shielded that alien from detection by immigration and other law enforcement authorities, and aided and abetted the concealing, harboring, and shielding of that alien, in a place, namely the Girard Point Bridge. All in violation of [8 U.S.C. §§ 1324(a)(1)(A)(iii), 1324(a)(1)(B)(i), and 1324(a)(1)(A)(v)(II)].

(Indictment at 11.) As such, Count III tracks the language of the Harboring Statute, informs Zubialevich that he is charged with violating that statute, lists the elements of a violation, and specifies the time period in which the violation occurred. It also explicitly asserts that

9

Zubialevich aided and abetted a violation of the statute.  See Huet, 665 F.3d at 599 (stating that "the terms 'aid' and 'abet,' as used in common parlance, sufficiently connote action and intent" for purposes of Rule 12(b)(3)(B) motion (citation omitted)).  Furthermore, Zubialevich does not assert – and, indeed, could not credibly assert – that the factual orientation provided in the Indictment leaves him unable to prepare his defense and invoke double jeopardy.  Under these circumstances, we find that the Indictment adequately alleges the elements of the primary and aiding and abetting offenses charged in Count III, and we deny Zubialevich's Motion to Dismiss insofar as he argues that the Count fails to state an offense.

### III. CONCLUSION

For the foregoing reasons, we deny the Motion to Dismiss Count III of the Indictment. An appropriate order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.